BARGER *v.* THE STATE OF OHIO.

*Criminal law — First degree murder — Policeman killed while arresting suspicious character — Failure to prove ordinance authorizing such arrest — Time of forming deliberate and premeditated malice — Refusal to give special charges before argument.*

1. In a criminal prosecution for the murder of a police officer while attempting to arrest the accused on suspicion, the failure of the state to prove that there was a city ordinance authorizing a police officer to make an arrest on suspicion is not reversible error, where the police officer told the defendant and his companion that they were under arrest, but did not take hold of either of them until after they had both pulled their revolvers.

2. The elements of deliberation and premeditation requisite to constitute first degree murder need not exist at any specific time or length of time, but only before the performance of the fatal act.

3. The court in a criminal trial may, at its discretion, give or refuse to give special charges requested before argument.

(Decided November 16, 1920.)

Error:   Court of Appeals for Butler county.

*Mr. M. O. Burns* and *Mr. Clinton Egbert,* for plaintiff in error.

*Mr. Isaac C. Baker,* prosecuting attorney, for defendant in error.

Cushing, J.   Nelson J. Barger was indicted, tried and convicted of murder in the first degree, without a recommendation of mercy.   The errors assigned, and argued in the briefs, are here considered.

The facts developed at the trial were that Barger with three other young men met Sunday afternoon, October 14, on B street in Hamilton, Ohio, and planned to hold up a crap game that night.   The game was operated by Greeks on Court street in the city of Hamilton.   About 11:00 that night, the four men armed themselves with revolvers. Barger had two, a 32 and a 38 caliber.   By appointment they met down town at the Grand Theater.   After a consultation at that point, they separated to meet at Fourth and Court streets. Nelson J. Barger and Kimber Baker were the first to arrive at that point.   It was then about 1:00 o'clock.   While waiting for their companions, Officer Harry Baker inquired as to their business there at that time of night, and their names, and stated that he placed them under arrest on suspicion.   He extended his hands to but did not take hold of either.   Both men resisted the officer. Kimber Baker drew his revolver.   The officer grabbed and scuffled with him.   Barger watched them for a time, and then, when some five feet

away, drew from his pocket the 32-caliber revolver, pointed it at Officer Baker and snapped it twice. Each time it failed to discharge. He then drew the 38-caliber, and while the scuffle was going on, and he was free, and at a distance of at least five feet from Officer Baker, he shot him in the back with a ball from the 38-caliber revolver. This caused the officer to release his hold on Kimber Baker. As he did so, Barger fired a second shot. The bullet missed the officer and struck Kimber Baker in the left shoulder. Officer Baker died within a few minutes from the effect of the shot that Barger fired. The bullet entered his body about the left shoulder, passed through the lung and the pericardium of the heart.

Barger, at the time he fired the shot that caused Officer Baker's death, was such a distance from him that there were no powder marks on Baker's clothes. The officer had on an overcoat, tightly buttoned around him. When found, his revolver was in his trousers' pocket, and that was his only weapon. Barger and Kimber Baker fled. There was no eyewitness to the killing. The two men were seen running up the street, but were at such a distance that they could not be identified. The only clue left at the scene of the murder was a cap worn by one of the men. Using this, the police department of the city of Hamilton learned the names of the four men who had planned to hold up the Greek crap game. They were Nelson J. Barger, Kimber Baker, Justus Bowling and Hargis Callahan. The killing occurred about 1:15 o'clock, Monday morning, October 15. Barger fled to Kentucky. On Friday following the murder he

was arrested at Berea, Kentucky. When returned to the city of Hamilton, he made a written confession, and at the trial of this cause, March 5, 1920, took the stand in his own behalf and repeated the same story told, in his confession, substantially as here detailed.

The principal grounds urged for reversal are that Officer Baker did not have authority to arrest Barger, as there was no evidence at the trial that the city of Hamilton had passed an ordinance authorizing the arrest of persons on the ground of suspicion, nor was there any evidence that Barger had committed a crime, or misdemeanor, and that the facts and circumstances of the trial did not establish that the killing was unlawful, was purposely done, or that it was done maliciously with deliberation and premeditation. It is certain from the record that Nelson J. Barger killed Harry Baker in the manner described, that the killing was unlawful, and that the elements of purpose and malice were established.

The principal contention of counsel for plaintiff in error is that the elements of deliberation and premeditation were not proved at the trial. Counsel cite the case of *Foster* v. *State,* 90 Ohio St., 241. In that case the court states the facts of the killing and says:

"This evidence offered by the state wholly fails to show deliberate and premeditated malice at the time defendant shot and killed the deceased."

In his written confession, and on the witness stand, Barger said:

"As I said that Kimber Baker started with his pistol and when he jerked his pistol I jerked mine

and about the time his pistol fired I snapped the small pistol I had twice at this man and it did not fire. Then I throwed the 38 pistol I had on him and fired at him, to the best of my knowledge. As the guns fired the man run in and grabbed ahold of Kimber Baker, and as they come loose from the scuffle I fired another shot and Kimber Baker stepped out of the dark in front of my pistol and he was shot in the shoulder."

From this statement and the record, it is certain that Barger shot Officer Baker while the latter was scuffling with Kimber Baker, that the scuffle and the affray, to use his own words, "lasted not over — not over two minutes." Barger had sufficient time within which to make up his mind whether he would protect his companion from arrest or whether he would make good his escape. Going on the errand that they were, for the purpose of using guns to hold up the Greeks, operating a crap game, he was in a frame of mind to use his gun in case of interference by any person. In addition to having time to determine the question of whether he would stay or flee, he attempted to use the small revolver twice, and, as it was not found in that vicinity, he must have replaced it in his pocket and drawn the larger one and aimed it at Officer Baker, when he was not in danger of arrest, nor in the act of defending himself in any way, but for the one purpose of shooting Officer Baker.

It is settled that "The law fixes no length of time, if the person has actually formed the purpose maliciously to kill, and deliberated and premeditated upon it before he performs the act; * * *. It matters not how short the time, if the party has

turned it over in his mind, weighed, and deliberated upon it." *Shoemaker* v. *State,* 12 Ohio, 43.

It is evident from the record that Barger decided to use his weapon rather than walk away. It is not the time of deliberation and premeditation that is requisite, but the actual existence of deliberation and premeditation before the time the fatal shot is fired. *Zeltner* v. *State,* 13 C. C., N. S., 417, affirmed 62 Ohio St., 655.

The claim of failure of proof on the part of the state to establish that there was an ordinance of the city of Hamilton authorizing a police officer to make an arrest on suspicion is answered by Barger in his confession and testimony at the trial. He said:

"He asked us where we lived and what our names was. Then he told us we was under arrest. I asked him what was the idea of arresting us. He said 'on suspicion,' and said 'come on.' Baker swore and said he wasn't going. I asked the man where he got that stuff — 'suspicion.' As I said that Kimber Baker started with his pistol and when he jerked his pistol I jerked mine and about the time his pistol fired I snapped the small pistol I had twice at this man and it did not fire."

The only evidence of arrest was the statement imputed to Officer Baker. He did not take hold of either of them until after both men had pulled their revolvers. Their acts in so doing authorized the officer to make the arrest. It follows that the failure of the state to offer in evidence the ordinance was not such error as would justify a reversal of the case.

On the question of failure to give special charges requested before argument the law is that the court is authorized, but not required, to give special charges before argument in a criminal case. *Wertenberger* v. *State,* 99 Ohio St., 353.

The judgment of the court below will be affirmed.

*Judgment affirmed.*

SHOHL, P. J., and HAMILTON, J., concur.